**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THEODORA ZEIBEKIS<br>109 Sharlow Drive<br>Wallingford, PA 19086<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S HOSPITAL OF PHILADELPHIA d/b/a CHOP<br>3501 Civic Center Blvd.<br>Philadelphia, PA 19104<br><br>Defendant. | CIVIL ACTION<br><br>NO.: ___________________________<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Theodora Zeibekis (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by The Children's Hospital of Philadelphia d/b/a CHOP (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d et seq.), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law(s). There lies supplemental jurisdiction over Plaintiff's state-

law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

6. Plaintiff has properly exhausted her administrative remedies regarding her PHRA and PFPO claims by dual-filing her Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and by waiting at least one year since the filing before asserting her PHRA claims.

## PARTIES

7. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

8. Plaintiff is an adult who resides at the above-captioned address.

9. The Children's Hospital of Philadelphia d/b/a CHOP is a leading pediatric hospital and research facility, located at the above-captioned address.

10. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

11. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

12. Plaintiff is an adult 24-year-old female.

13. Plaintiff had recently graduated from college when she began working for Defendant, on or about December 9, 2024, as a Research Technician III from Defendant's Colket Translational Research Building.

14. At the time of her placement in the Research Technician III position, Defendant was aware of Plaintiff's recent educational background and level of research experience.

15. Plaintiff was primarily supervised by Lead Senior Scientist, Shannon Carroll (hereinafter "Carroll"), Clinical Research Program Manager for the Division of Plastic, Reconstructive, and Oral Surgery, Abinaya Arulselvan (hereinafter "Arulselvan"), and Director of the Center for Craniofacial Innovation, Dr. Eric Chien-Wei Liao (hereinafter "Liao").

16. During Plaintiff's tenure with Defendant, Plaintiff consistently demonstrated a strong work ethic and performed her job duties diligently and competently.

17. Nonetheless, Plaintiff was abruptly terminated on or about February 21, 2025, as a result of her gender, as well as her complaints of/objections to gender discrimination.

18. For example, on or about January 31, 2025, Plaintiff was working alongside Resident Post Doctoral Fellow student, Scott Tucker (hereinafter "Tucker"), where Tucker aggressively pushed in front of Plaintiff, shoved his finger in Plaintiff's face, and yelled at Plaintiff in an intimidating and threatening manner, while physically towering over her.

19. Due to the angry and aggressive nature of Tucker's aforesaid conduct on or about January 31, 2025, Plaintiff feared that Tucker would become physically violent.

20. Plaintiff felt particularly vulnerable because Tucker stood over six (6) feet tall in comparison to Plaintiff's substantially smaller physical stature, and because this was Plaintiff's first professional position following college.

21. Plaintiff also personally observed Tucker engage in similarly intimidating conduct toward another female employee, Helen (Last Name Unknown – hereinafter "Helen"), a medical student who worked part-time in Defendant's laboratory.

22. Specifically, Plaintiff observed Tucker position himself in close and/or intrusive physical proximity to Helen while she was working at a laboratory machine, after which Plaintiff observed Helen crying.

23. Importantly, Plaintiff had never observed Tucker treat any *male* employee in the laboratory in a similarly threatening, aggressive, or intimidating manner.

24. Thereafter, on or about February 4, 2025, Plaintiff reported Tucker's aforementioned threatening and inappropriate conduct to Liao and Carroll, but her concerns were immediately dismissed, and Liao subsequently raised for the first time the possibility of placing Plaintiff on a Performance Improvement Plan ("PIP").

25. Upon Plaintiff's observations and belief, Liao readily dismissed her concerns regarding Tucker, because he clearly preferred male employees over female employees in the lab.

26. Although there were more female than male employees working within Liao's laboratory, Plaintiff was subjected to and/or observed Liao routinely ignore the concerns of female employees, talk down to female employees, and otherwise treat female employees in a belittling, condescending, and dismissive manner.

27. In fact, Plaintiff's concerns regarding Liao's treatment of female employees were corroborated by female employees with whom Plaintiff worked, including Ari [Last Name Unknown] and Carroll whom each informed Plaintiff that Liao's discriminatory and disparate treatment of them had caused them to cry.

28. In contrast, Plaintiff observed Liao speak highly of, praise, and provide preferential treatment to the comparatively few male employees working in the laboratory. For example, Liao regularly took at least one *male* employee, including Tucker, out for a steak dinner and repeatedly praised male employees working within the laboratory.

29. On or about February 12, 2025, because Liao failed to take Plaintiff's concerns regarding Tucker seriously or take appropriate remedial action, when she remained fearful of continuing to work with Tucker, Plaintiff escalated her complaints to Arulselvan and Human Resources ("HR") personnel, Rodrigo Gamarra (hereinafter "Gamarra").

30. During the aforementioned February 12, 2025 meeting, Plaintiff specifically stated that she believed Liao's treatment constituted gender discrimination, as he treated females far less favorably than male employees, that after complaining about Tucker's aggressive behavior she was threatened with a PIP and termination, and that male employees were not subjected to such discriminatory and disparate behavior.

31. Plaintiff further expressly complained that the close temporal proximity between her report concerning a favored male employee, Tucker, and the subsequent discussion of a PIP by Liao caused her to believe Defendant was both discriminating *and* retaliating against her.

32. However, rather than advising Plaintiff to formally escalate her concerns regarding Tucker and Liao, Arulselvan advised Plaintiff to "keep [her] head down" and "put in some extra hours."

33. Plaintiff understood Arulselvan's advice as directing her to just ignore and appease Liao's discriminatory and disparate behavior by working additional hours, despite Plaintiff's concerns regarding Liao's treatment of her following her report of Tucker's offensive, harassing, and sexist behavior.

34. Nonetheless, on or about February 14, 2025, Plaintiff met with HR representative, Ms. Kern (hereinafter "Kern") and escalated her aforementioned complaints of discrimination and retaliation. But once again, rather than encouraging Plaintiff to pursue her complaints and/or properly investigate them, Kern discouraged Plaintiff from further escalating her concerns to Defendant's Employee Relations ("ER") Department.

35. Nevertheless, on or about February 18, 2025, because neither Liao nor HR appeared willing to address Plaintiff's concerns regarding Tucker's conduct, Plaintiff escalated her complaints to ER Specialist, Choi Reese (hereinafter "Reese").

36. Plaintiff specifically informed Reese that she believed she was being subjected to gender discrimination, that Liao treated female employees less favorably than male employees and that, after Plaintiff complained of her male co-worker's threatening, angry, and aggressive behavior, she was threatened with a PIP and termination.

37. Plaintiff further advised Reese that male employees were not subjected to the same discriminatory and disparate treatment concerning discipline and termination as female employees, to which Reese responded that she would investigate Plaintiff's complaints

38. Thereafter, on or about February 20, 2025, Carroll approached Plaintiff, appearing fearful and visibly shaking, while simultaneously informing Plaintiff that she did not feel

comfortable permitting Plaintiff to perform her work anymore, but instead insultingly directed Plaintiff to spend the day reading a biology basics textbook (for the first time), which she shoved into Plaintiff's hands with great force.

39. Thus, Carroll removed Plaintiff's regular job responsibilities (including reviewing relevant published articles in their field on PubMed) and relegated her to simply reading what Plaintiff believed to be a remedial biology textbook.

40. Plaintiff found the aforementioned February 20, 2025 exchange with Carroll to be very odd, as was Carroll's fear, and Plaintiff has no doubt that Carroll's punishing her and relegating her to reading a basic biology textbook only to be in direct retaliation for Plaintiff's complaints of gender discrimination, a hostile work environment, and retaliation.

41. Then, on or about February 21, 2025, Plaintiff again spoke with Kern and Reese concerning Defendant's discriminatory and retaliatory treatment of her, during which, Plaintiff expressly complained that Carroll's removal of her regular work responsibilities constituted retaliation for Plaintiff's prior complaints of harassment, gender discrimination, and retaliation. Reese responded by simply reiterating she would continue investigating Plaintiff's complaints.

42. However, despite advising Plaintiff that her complaints remained under investigation, Defendant abruptly terminated Plaintiff's employment later that same day (February 21, 2025) for alleged "performance issues."

43. Defendant's purported performance-based justification for terminating Plaintiff is completely false and pretextual because (1) Plaintiff had been performing well and gaining more experience during her tenure with Defendant; (2) during the weeks preceding Plaintiff's termination, she had continued learning Defendant's laboratory procedures and expectations in the same manner as other newly hired employees of both sexes; (3) leading up to her termination, Carroll provided Plaintiff with positive feedback and did not identify any additional areas in which

Plaintiff needed to improve; (4) at least one male co-worker, Ryan (last name unknown, hereinafter "Ryan") needed assistance with adequately explaining difficult concepts and was consistently late to scheduled meetings but was not terminated for the same; and (5) Plaintiff was terminated ***just one day*** after her renewed claims of discrimination, disparate treatment, and repeated retaliation – specifically stating that male colleagues were not treated so unfairly with regard to discipline and/or termination.

44. Notably, Defendant's management including Reese, in a belated, transparent effort to hide its true discriminatory, disparate, and retaliatory reason for terminating Plaintiff, made sure to advise Plaintiff at her termination it had nothing to do with her complaints of harassment, discrimination, and retaliation, but that Liao, instead allegedly did "not have time to babysit [her]."

45. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, retaliation, and termination because of her gender and her complaints of gender discrimination.

**COUNT I**
**<u>Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")</u>**
**([1] Gender Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of her gender.

48. Plaintiff was treated disparately with respect to work, policies, and termination contrary to her male co-workers.

49. Leading up to her termination, Plaintiff complained to multiple members of management that she was being subjected to gender discrimination, such that it was creating a hostile work environment.

50. Plaintiff was abruptly terminated on or about February 21, 2025, for completely pretextual reasons.

51. Plaintiff believes and therefore avers that she was subjected to discrimination, a hostile work environment, and retaliation because of her gender and her objections to/complaints of gender discrimination.

52. Plaintiff also believes and therefore avers that her gender was a motivating and/or determinative factor in the termination of her employment by Defendant.

53. These actions as aforesaid constitute unlawful discrimination, a hostile work environment, and retaliation under Title VII.

**COUNT II**
**Violations of the Pennsylvania Human Relations Act ("PHRA")**
**([1] Gender Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

54. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55. Plaintiff properly exhausted her administrative remedies regarding her PHRA claims because she timely filed a charge of discrimination with the PHRC (by dual-filing her claims with the EEOC) and the charge has been pending for at least one year.

56. The aforesaid allegations also constitute violations of the PHRA. Thus, Plaintiff's PHRA claims mirror the claims set forth in Count I.

**COUNT III**
**Violations of the Philadelphia Fair Practices Ordinance**
**([1] Gender Discrimination; [2] Hostile Work Environment; and [3] Retaliation)**

57. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58. Plaintiff properly exhausted her administrative remedies regarding her PFPO claims because she timely filed a charge of discrimination with the PHRC, and the charge has been pending for at least one year. *See e.g. Vandegrift v. City of Phila.*, 228 F. Supp. 3d 464, 482-83 (E.D. Pa. 2017) (dual-filing of charges of discrimination with the EEOC and the Pennsylvania Human Relations Commission satisfied the Philadelphia Ordinance exhaustion requirement).

59. The aforesaid allegations also constitute violations of the PFPO. Thus, Plaintiff's PFPO claims mirror the claims set forth in Count I.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: September 10, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Theodora Zeibekis | : | CIVIL ACTION |
| v. | : | |
| The Children's Hospital of Philadelphia d/b/a CHOP | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (x )

| 9/10/2026 | [signature] | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Defendants place of business

***RELATED CASE IF ANY:*** Case Number:__________ Judge:__________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A. **Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief ***see certification below***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:__________

**B. *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):__________
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*__________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

ZEIBEKIS, THEODORA

**(b)** County of Residence of First Listed Plaintiff: Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

**DEFENDANTS**

THE CHILDREN'S HOSPITAL OF PHILADELPHIA D/B/A CHOP

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
Title VII (42USC2000)

Brief description of cause:
Violations of Title VII, PHRA and PFPO.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ________ DOCKET NUMBER ________

DATE: 9/10/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________